Opinion of the Court by
Judge Owsley.
To obtain a conveyance of the legal title to land held by the plaintiffs in error, under the prior grant from the Commonwealth, the, defendants in error, exhibited their bill in chancery, claiming the superior equity, under the following entry:

“April 2nd, 1781.

William Montgomery enters live hundred acres, upon a treasury warrant, on the waters of Chaplin’s Fork, to begin at a beech tree, marked with a T. near the trace leading from salt river garrison to Harrodsburgh, and about one fourth of a mile from the crossing, and on the lower side of said fork, and to run South-westwardly two hundred poles, then northwardly and back for quantity.”
The court below sustained the entry, and decreed the legal title held by the plaintiffs in error to conveyed.
Proof that the tree called for, as marked with a letter, for the beginning corner, was in fact marked, is indispensable, to maintain the entry.
To prove a tree marked at the date of the entry, testimony of one witness that he saw the marks the year afterwards, saying nothing of their appearance, and another that he saw them 3 or 4 years after the date of the entry, and thought they appeared to have been made two or three years, not sufficient.
In reviewing that decree, it is not necessary that We should go into a particular examination of all the calls of the entry; it is not necessary to do so, because, were there no other objection to die. entry, we should be of opinion that in consequence of the lack of evidence to prove the beech tree, at which the survey was made to begin, to have been marked with the letter T. at the date of the entry, the decree cannot he sustained, it is by establishing the identity of the marked tree only, that the actual position and figure of the laud intended to he located can be ascertained, and without evidence to prove the tree had marks upon it when the entry was made, it is impossible to say that the court was correct in decreeing a conveyance of the legal title from the plaintiffs in error.
We would not he understood to say that nothing short of the positive testimony of a witness who had seen the mark upon the tree before the entry was made, would be sufficient to sustain the entry ; but it is intended to say that it is essential to the validity of the entry, that the letter should have been upon the tree when the entry was made, and without convincing evidence that the tree was previously marked, the adverse title of the plaintiffs in error should not have been decreed from them. The tree at which the survey was made to begin, was proved to have had the letter visibly upon it after the date of the entry, but there is no witness that hazards even a conjecture that the letter was marked upon the tree before the entry was made. One witness says that he saw the letter upon the tree, in 1782, and another proves that he saw the letter upon the same-tree in 1784 or 1785. and the latter witness moreover says that lie thinks the letter then had the appearance of having been made two or three years before. But giving to the testimony of the latter witness the utmost weight to which it can, upon any fair principle of construction, be entitled, it goes only to prove the existence of the letter upon the tree, in 1782, when it was seen by the former witness, and the former witness has totally failed to suggest even a belief from the appearance of the *339 letter, when lie saw it, as to the time it was probably made upon the tree.
Artificial entries called for, must be proved to have existed cotemporary with the entry, as to natural ones, it may be presumed.
Hardin and Crittenden, for plaintiffs; Rowan, for defendants.
Objects which from the course of nature must have existed before the date of the entry, would doubtless be sufficiently proved to have then existed, by being proved to exist now, but objects, such as marks upon a tree, which though they may now have an existence, may not have existed yesterday, surely cannot, from the fact of their now appearing, he presumed to have existed at any particular period heretofore.
It results, therefore, that the court erred in sustaining the entry, and that the decree must, consequently be reversed with cost, the cause remanded to the court below, and the bill dismissed with cost.